UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES A. FORD,

    Plaintiff,

        v.

SHAWN DONOVAN et al.,

    Defendants.

Civil Action No. 11-1211 (JEB)

## MEMORANDUM OPINION

*Pro se* Plaintiff James Ford resides in the James Apartments in Northwest Washington, which is a public-housing complex owned and managed by the District of Columbia Housing Authority. Plaintiff has brought this lawsuit alleging improprieties relating to the election of President of the Resident Council, a position that he sought and failed to obtain. He has named eight defendants: five DCHA officials, the winner of the election, the independent monitor of the election, and the Secretary of the United States Department of Housing and Urban Development. Although his Complaint is difficult to follow in places, he asserts causes of action under 42 U.S.C. § 1983, as well as the Eighth and Fourteenth Amendments.

The independent monitor, Scott Haapala, has been dismissed as a defendant for failure of service. See ECF No. 28. In addition, the claims against Council President Leonard Dixon and HUD Secretary Shawn Donovan will now be dismissed as conceded since Plaintiff never responded to their Motions to Dismiss. As to the DCHA Defendants, however, the case may proceed because they have erroneously asserted absolute immunity, to which they are not entitled.

1

I.    **Background**

According to the Complaint, amended by "additional points and authorities," see Am. Compl. at 3, which must be presumed true for purposes of these Motions, Plaintiff is a resident of the James Apartment Complex.  Compl. at 3.  In April 2011, he decided to run for President of the Resident Council of that complex.  Id. at 4.  He alleges a number of voting irregularities during the course of the election.  Id. at 5-6.  These violations include examples of voting fraud and the misuse of public funds by Defendant Dixon, the ultimate winner of the election.  Id. Plaintiff also alleges that defendant Haapala, the third-party monitor, failed to correctly monitor the election and improperly denied Plaintiff's appeal.  Id. at 6.  Plaintiff's further appeal to Secretary Donovan also apparently fell on deaf ears.  Id. at 6-7.  In addition, Plaintiff contends that Dixon has been misusing his office and refusing to hold elections for years and that DCHA officials have aided this abuse of office.  Id. at 9-10.

In his Amended Complaint, Plaintiff supplements his allegations, claiming that the DCHA officials have improperly supervised the Resident Council, failed to obtain grants that the James Apartments could have received, and permitted Dixon free rein as President.  See Am. Compl. at 6-9.  Plaintiff has indicated that he is suing all of the five DCHA officials in both their individual and official capacities.  See Compl. at 3.

On Aug. 11, 2011, the DCHA Defendants filed a Motion to Dismiss.  After the Court had advised Plaintiff that he must respond or the Motion could be deemed conceded, he filed a document styled "Plaintiff's Answer to Defendant's Motion to Dismiss."  See ECF No. 15.  This document is plainly addressed to the DCHA Defendants' arguments in their Motion.  The same day, Sept. 13, 2011, Defendant Dixon filed a separate Motion to Dismiss, which was mailed to Plaintiff on Sept. 14.  The Court again informed Plaintiff that he must respond on or before Sept.

2

30 or face dismissal. That Order was also mailed to Plaintiff on Sept. 14. He filed no opposition. On Nov. 15, Secretary Donovan filed a separate Motion to Dismiss, and on Dec. 15, the Court ordered Plaintiff to respond by Jan. 3, 2012, or face dismissal. Plaintiff never responded to that one either.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). Although the notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

## III.    Analysis

A.  <u>Defendants Dixon and Donovan</u>

Local Civil Rule 7 governs the time within which an opposition to a dispositive motion must be filed, as well as the consequences of failure to file any opposition: "Within 14 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded."  LCvR 7(b).  Despite three separate Orders from the Court to Plaintiff about the Rule and the risks of not responding, Plaintiff only responded to the Motion filed by the DCHA Defendants.  As a result, the Court will treat the Motions filed by Dixon and Donovan as conceded and dismiss the case as to them only.

B.  <u>DCHA Defendants</u>

In moving to dismiss, the DCHA Defendants argue that they are immune from liability.  <u>See</u> Motion at 4 ("Defendants cannot be held liable for acts committed within the scope of their official duties" under the "Public Official Immunity Doctrine").  Although they never use the term "absolute immunity," this is certainly the type of immunity they appear to claim.  In so doing, they argue too broadly.  The Supreme Court has ruled that officials will only receive a grant of absolute immunity from liability in a § 1983 action – as opposed to common-law torts, <u>see</u> <u>Payne v. District of Columbia</u>, 773 F. Supp. 2d 89, 102-03 (D.D.C. 2011) (District official absolutely immune from liability for common law torts) – upon a "showing that public policy requires an exemption of that scope."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 808 (1982) (citing <u>Butz v. Economou</u>, 438 U.S. 478, 505 (1978)).  While <u>Harlow</u> dealt with suits against federal officials, the Court also made clear that "it would be untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." <u>Id.</u> at 818, n.30 (internal quotations and citations omitted).

"[A]s a general matter, the Supreme Court has been quite sparing in its recognition of claims to absolute official immunity, to ensure against extending the scope of the protection further than its purposes require." Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 682 (D.C. Cir. 2009) (citation and internal quotations omitted). Absolute immunity "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Id. (citation and internal quotation omitted; emphasis original); see also Gray v. Poole, 275 F.3d 1113, 1116 (D.C. Cir. 2002). For example, judicial or quasi-judicial functions, as well as prosecutorial functions, would obtain absolute immunity. Atherton, 567 F.3d at 682; see also Flicken v. Golden, 696 F. Supp. 2d 21, 29 (D.D.C. 2010) ("absolute immunity extends to agency officials performing certain functions analogous to those of a prosecutor") (citing Butz, 438 U.S. at 478). In addition, legislative functions are similarly cloaked, including the promulgation of regulations claimed to be unconstitutional. See Fletcher v. U.S. Parole Comm'n, 550 F. Supp. 2d 30, 40 (D.D.C. 2008) (citing Jayvee Brand, Inc. v. United States, 721 F.2d 385, 394-95 (D.C. Cir. 1983)). The law, however, has not stretched this doctrine to cover officials at an agency like DCHA who are functioning not as judges, prosecutors, or legislators.

Although not entitled to absolute immunity, the DCHA Defendants are not without defenses. The doctrine of qualified immunity is still available. In order to receive qualified immunity, the public official must show that his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. Although they may in future be able to satisfy this standard, Defendants here have failed even to assert it.

**IV.    Conclusion**

The Court, therefore, will issue a contemporaneous order denying the DCHA Defendants' Motion to Dismiss and granting the Motions of Dixon and Donovan as conceded.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: Feb. 13, 2012