**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **JAMES A. FORD, JR.,** |
| **Plaintiff,** |
| **v.** |
| **SHAWN DONOVAN,** *et al.*, |
| **Defendants.** |

**Civil Action No.  11-1211 (JEB)**

<u>**MEMORANDUM OPINION**</u>

*Pro se* Plaintiff James Ford resides in the James Apartments in Northwest Washington, which is a public-housing complex owned and managed by the District of Columbia Housing Authority.  He has brought this lawsuit alleging improprieties relating to the operations of the Resident Council, particularly the election process for Council President, a position that he sought and failed to obtain.  Of the eight Defendants who were initially named, the Court has since dismissed three.  Each of the five remaining Defendants is a DCHA official.  Although his Complaint is difficult to follow in places, Plaintiff asserts causes of action under 42 U.S.C. §§ 1983 and 1985, suing the remaining Defendants in both their individual and official capacities. Defendants initially attempted to assert absolute immunity, but the Court previously found that defense inapplicable.  They have now filed a Motion for Judgment on the Pleadings in which they instead claim qualified immunity, in addition to raising other defenses.  Largely because they are entitled to such immunity, the Court will grant Defendants' Motion.

I.      **Background**

After filing his initial Complaint, <u>see</u> ECF No. 1, Plaintiff then filed what he terms "Additional Facts and Points and Authorities."  <u>See</u> ECF No. 5.  Instead of superseding his

1

original Complaint, as a typical Amended Complaint does, this later pleading supplements it. Given his *pro se* status, the Court will treat the combined pleadings as one joint Complaint. According to this joint Complaint, which must be presumed true for purposes of this Motion, Plaintiff is a resident of the James Apartment Complex in the District.  <u>See</u> Compl. at 3.  In April 2011, he decided to run for President of the Resident Council of that complex.  <u>See</u> <u>id.</u>  After losing the election, he brought this suit.

In general terms, Plaintiff claims that a number of voting and financial irregularities in the election process violated his constitutional rights and Department of Housing and Urban Development regulations.  <u>See</u> <u>id.</u> at 4-7.  In his original Complaint, he alleged examples of voting fraud and the misuse of public funds by former Defendant, Council President Leonard Dixon, the ultimate winner of the election.  <u>Id.</u> at 5-6.  He also contended that former Defendant and third-party election monitor Scott Haapala failed to correctly monitor the election and improperly denied Plaintiff's appeal.  <u>Id.</u> at 6.  With his Amended Complaint, Plaintiff further develops his claims, alleging that Defendants violated HUD regulations by improperly supervising Council President elections and by permitting the Resident Council to operate while in noncompliance with requirements regarding bylaws and board structure.  <u>See</u> Am. Compl. at 3-10.

## II.    Legal Standard

Defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, for summary judgment.  A Rule 12(c) motion is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss, <u>see, e.g.</u>, <u>Robinson-Reeder v. Am.</u> <u>Council on Educ.</u>, 532 F. Supp. 2d 6, 12 (D.D.C. 2008), which must rely solely on matters within the complaint.  <u>See</u> Fed. R. Civ. P. 12(d).  This includes statements adopted by reference as well

as copies of written instruments joined as exhibits.  Fed. R. Civ. P. 10(c).  Where the Court must consider "matters outside the pleadings" to reach its conclusion, a motion to dismiss "must be treated as one for summary judgment under Rule 56."  Fed R. Civ. P. 12(d); see also Yates v. Dist. of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003).  The Court here need not look beyond the pleadings.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim on which relief can be granted."  When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in the plaintiff's favor.  Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993).  The notice-pleading rules are "not meant to impose a great burden on a plaintiff."  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id.

### III.    Analysis

As best the Court can discern, Plaintiff asserts claims under 42 U.S.C. §§ 1983 and 1985, alleging violations of the Eighth Amendment, the Fourteenth Amendment (procedural due process), and federal regulations.  Although they provide very limited analysis, Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted.  They further assert, among other arguments, that they are entitled to qualified immunity for the individual-capacity claims.  Because qualified immunity is a threshold issue, the Court must address it first. Following this discussion, the Court will consider Plaintiff's official-capacity claims.

### A.  Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  As Defendants explain, since qualified immunity is "immunity from suit," the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson, 555 U.S. at 232 (citations and internal quotations omitted).

To show that a government official is not protected by qualified immunity, a plaintiff must establish (1) that the defendant's conduct violated the Constitution, and (2) that the constitutional right that was violated was sufficiently established such that a reasonable person would have known the conduct violated the Constitution.  Id. at 231.  Furthermore, to reject an official's claim of qualified immunity, "the unlawfulness" of his action must be apparent "in light of pre-existing law."  Atherton v. Dist. of Columbia Office of Mayor, 567 F.3d 672, 689-90 (D.C. Cir. 2009) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (internal quotation

marks omitted).  This two-step inquiry also applies to violations of statutory rights.  See Davis v. Scherer, 468 U.S. 183, 194 n.12 (1984) ("officials may lose their immunity by violating 'clearly established statutory . . . rights.'") (quoting Harlow, 457 U.S. at 818).  In such situations, the relevant statute must provide "the basis for the cause of action sued upon."  Id.

The Court will thus consider whether Defendants are entitled to qualified immunity on each of Plaintiff's individual-capacity claims.

### 1.  Section 1985

Notwithstanding the lack of attention paid by Defendants to Plaintiff's allegations of § 1985 violations, the Court finds that Defendants are entitled to qualified immunity on this claim because Plaintiff has failed to establish that any violation occurred.  By its own title, 42 U.S.C. § 1985 prohibits a "[c]onspiracy to interfere with civil rights."  The first subsection "makes it unlawful for 'two or more persons . . . [to] conspire to prevent, by force, intimidation, or threat, any person . . . from discharging any duties [of public office]; . . . or to injure him in his person or property on account of his lawful discharge of the duties of his office.'"  Barr v. Clinton, 370 F.3d 1196, 1200 (D.C. Cir. 2004) (quoting 42 U.S.C. § 1985(1)).  The second subsection "prohibits conspiracies to interfere with judicial proceedings in federal court." Graves v. United States, 961 F. Supp. 314, 319 (D.D.C. 1997) (citing 42 U.S.C. § 1985(2)). Finally, the third subsection prohibits two or more persons from conspiring "to deprive any person of equal protection of the laws."  Id. at 320 (citing 42 U.S.C. § 1985(3)).  While Plaintiff does not specify under which subsection of § 1985 he brings suit, only subsection three is potentially applicable.  The first two subsections are irrelevant because Plaintiff "has alleged neither a conspiracy to prevent a government officer's discharge of her official duties, nor a conspiracy to obstruct justice . . . in a judicial proceeding."  McCreary v. Heath, No. 04-0623,

2005 WL 3276257, at *5 n.8 (D.D.C. Sept. 26, 2005).

The two essential elements of a conspiracy under subsection three are (1) the existence of an actual conspiracy and (2) "the allegation of some class-based, invidiously discriminatory animus behind the co-conspirators' actions."  Id. at *5 (citing United Bhd. of Carpenters and Joiners of America v. Scott, 463 U.S. 825, 835 (1983)).  "To survive a motion to dismiss a Section 1985 claim, plaintiff must set forth more than conclusory allegations of an agreement." Bush v. Butler, 521 F. Supp. 2d 63, 68 (D.D.C. 2007); see also McCreary, 2005 WL 3276257, at *5 (dismissing plaintiff's 42 U.S.C. § 1985(3) claim because allegations that employer and union conspired to deprive him and other postal works of their constitutional rights were unsupported by any factual indications of an agreement).  Here, Plaintiff has failed even to allege the existence of an agreement – a "meeting of the minds" – among Defendants.  Nowhere, for example, does Plaintiff mention a conspiracy to keep the Resident Council operating in violation of regulatory requirements.  Furthermore, even if the lack of conspiracy were not itself dispositive, the fact that Plaintiff has made no allegation that Defendants' actions were motivated by some form of invidiously discriminatory animus is similarly fatal to his claim.  See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993) (without alleging "racial, or perhaps otherwise class-based discriminatory animus," plaintiff could not establish § 1985 conspiracy claim) (citation and internal quotation marks omitted).  Plaintiff's § 1985 claim, therefore, cannot survive Defendants' Motion because no violation of law occurred here.

2.  *Section 1983*

42 U.S.C. § 1983 provides for a cause of action against

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws . . . .

To state a claim under § 1983 against an official in his individual capacity, a plaintiff must plead

facts sufficient to allege (1) "the violation of a right secured by the Constitution and the laws of

the United States," and (2) "that the alleged deprivation was committed by a person acting under

color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff alleges both constitutional

and regulatory violations. The Court will address his claims in sequence.

### a. Eighth Amendment

Plaintiff's claim that Defendants violated his Eighth Amendment rights founders because

the Amendment's prohibition against "cruel and unusual punishment" applies only to persons

against whom the government "has secured a formal adjudication of guilt in accordance with due

process of law." Powers-Bunce v. Dist. of Columbia, 479 F. Supp. 2d 146, 153 (D.D.C. 2007)

(quoting Bell v. Wolfish, 441 U.S. 520, 536 n.16 (1979)) (internal quotation marks omitted).

Because Plaintiff has not been adjudicated guilty of any crime, he is unable to establish the

predicate constitutional violation. Defendants, accordingly, are entitled to qualified immunity on

this claim.

### b. Fourteenth Amendment

Plaintiff also alleges violations of his procedural due process rights under the Fourteenth

Amendment. While Defendants have failed to point this out, the Fourteenth Amendment does

not apply to the District of Columbia or its officials. See English v. Dist. of Columbia, 815 F.

Supp. 2d 254, 260 n.3 (D.D.C. 2011) (dismissing Fourteenth Amendment claim against the

District, mayor, and other officials). The District, which is not a state, is instead subject to the

Fifth Amendment's Due Process Clause. Id.; see also Butera v. Dist. of Columbia, 235 F.3d 637,

646 n.7 (D.C. Cir. 2001). Although it is within the Court's authority to simply dismiss Plaintiff's

Fourteenth Amendment due process claims, see English, 815 F. Supp. at 260 n.3 (dismissing

such claims against District of Columbia and several officials), the Court will assume *pro se*

Plaintiff meant to assert this claim under the Fifth Amendment.

   Granting him this leeway, however, proves of no assistance since even Fifth Amendment

claims cannot survive Defendants' Motion.  "The Fifth Amendment Due Process Clause protects

individuals from deprivations of 'life, liberty, or property, without due process of law.'"

Atherton, 567 F.3d at 689 (quoting U.S. Const. amend. V).  The first inquiry in such a challenge

is "whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.'  Only

after finding the deprivation of a protected interest do we look to see if the [government's]

procedures comport with due process."  Gen. Elec. Co. v. Jackson, 610 F.3d 110, 117 (D.C. Cir.

2010) (citation and internal quotation omitted).  Plaintiff cannot survive the first inquiry because

he has made no allegation that any of the named Defendants deprived him of a liberty interest,

and he has not articulated a cognizable property interest in the office of Resident Council

President.

   Courts have long held that "public office is not property."  Taylor v. Beckham, 178 U.S.

548, 576 (1900); see also Snowden v. Hughes, 321 U.S. 1, 7 (1944) (reaffirming Taylor).

Instead, "public offices are mere agencies or trusts, and not property as such."  Velez v. Levy,

401 F.3d 75, 86 (2d Cir. 2005) (original emphasis deleted) (quoting Taylor, 178 U.S. at 577)

(internal quotation marks omitted).  Just as an elected official has no cognizable property interest

in the office he holds, neither does a candidate for public office have a property right in any

prospective office.  See Wilson v. Birnberg, 667 F.3d 591, 597 (5th Cir. 2012) (upholding

district court's finding that "[plaintiff] had no property right to be a candidate"); see also Gamza

v. Aguirre, 619 F.2d 449, 452 n.3 (5th Cir. 1980) (finding that candidate had no property right in

state political office) (citing Snowden, 321 U.S. at 7).  Furthermore, Plaintiff does not have a property interest in any benefit he might claim could be awarded to the complex's tenants.  "To have a property interest in a benefit, a person must have more than an abstract need or desire for it."  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  He must have "a legitimate claim of entitlement to it."  Id.  Plaintiff's factual allegations are insufficient to state such a claim.

Finally, even were the Court to find that Plaintiff had been deprived of a property or liberty interest, he would be unable to make out a due process violation.  "[N]ot every election irregularity gives rise to a constitutional claim."  Hendon v. North Carolina State Bd. of Elections, 710 F.2d 177, 182 (4th Cir. 1983).  A plaintiff cannot establish a due process violation unless an election reaches the point of "patent and fundamental unfairness."  Id. (quoting Griffin v. Burns, 570 F.2d 1065, 1077 (1st Cir. 1978)) (internal quotation marks omitted).  Here, the only potential violations raised against these individual Defendants are that Lee was "deliberate[ly] indifferen[t] to the complaints Plaintiff made to her on several phone call conversations about the elections," Am. Compl. at 9, and that Redding failed to reply to Plaintiff's grievance letter "contesting the elections."  Compl. at 7.  Such incidents do not constitute due process violations.  See Ladner v. City of N.Y., 20 F. Supp. 2d 509, 514 (E.D.N.Y. 1998) ("mere election irregularities rarely rise to the level of a federal constitutional violation."); cf. Duncan v. Poythress, 515 F. Supp. 327, 336-37 (N.D. Ga. 1981) (federal courts "are neither empowered nor equipped to supervise the administration of local elections").  Because Plaintiff has not established a constitutional violation, Defendants are entitled to qualified immunity on this claim, too.

c.      HUD Regulations

While his position is lacking in clarity, Plaintiff also asserts violations of HUD regulations.  See, e.g., Am. Compl. at 7  (citing 24 C.F.R. §§ 700-1699); see also Compl. at 4 (same).  These claims cannot survive either.

As a threshold issue, it is not entirely clear whether a violation of the HUD regulations at issue here can form a basis for a § 1983 claim.  While there is precedent in this Circuit that may support such a claim, see Samuels v. Dist. of Columbia, 770 F.2d 184, 199-200 (D.C. Cir. 1985) (finding alleged violation of different HUD regulations supported a § 1983 claim where the regulations were pursuant to clear congressional mandate), there is substantial case law holding that federal regulations do not establish enforceable rights under § 1983.  See Note, William A. Liess, "A Call for Doctrinal Consistency in the Adjudication of § 1983 Claims Based on Violations of Federal Regulations," 38 Rutgers L.J. 947, 947, 969 (2007) (Supreme Court "has yet to rule squarely on the permissibility and bounds of § 1983 claims based on federal regulations," and "[t]he majority of circuit courts . . . [have] concluded that regulations could not establish rights enforceable under § 1983") (citing, e.g., Smith v. Kirk, 821 F.2d 980 (4th Cir. 1987); Save Our Valley v. Sound Transit, 335 F.3d 932 (9th Cir. 2003); S. Camden Citizens in Action v. N.J. Dep't. of Envtl. Prot., 274 F.3d 771 (3d Cir. 2001); Harris v. James, 127 F.3d 993 (11th Cir. 1997)).  Accordingly, for purposes of this section, the Court will assume, without deciding, that the instant regulations alone can create rights enforceable under § 1983.

Even if the Court assumes such rights exist, Plaintiff has failed to establish that these Defendants violated the specified regulatory provisions.  With respect to Defendants Love (DCHA Senior and Disability Coordinator), McLaurin-Southall (DCHA Family Services Coordinator), and Lee (DCHA Community Coordinator), Plaintiff has not alleged specific

actions or inactions that support a conclusion that any of them violated a HUD regulation.  For example, Plaintiff has made no particularized allegations directed at Love except to say that she "works directly with Dr. Brenda Redding."  Am. Compl. at 8.  Similarly, Plaintiff has failed to elaborate upon McLaurin-Southall's role in the incidents in question, stating only that she "works through Dr. Redding's Office."  Id.  Plaintiff does not explain whether Love or McLaurin-Southall was involved with the Resident Council or what they did that was improper.  Finally, he alleges that Lee was deliberately indifferent to Plaintiff's complaints regarding Council President elections and former Defendant Leonard Dixon's "anticks."  Id. at 9.  Plaintiff's allegations are thus not only undeveloped, but they are also unmoored from specific regulatory provisions.  In sum, since Plaintiff has failed to establish that Love, McLaurin-Southall, or Lee violated any HUD regulations, each of these three named Defendants is entitled to qualified immunity.

     With respect to Defendants Todman (Executive Director of DCHA) and Redding (Director of DCHA Office of Resident Services), Plaintiff's allegations are rather opaque.  His most comprehensible claim against these Defendants is that they ought to be liable for their failure to properly monitor and train subordinates.  See Am. Compl. at 6.  Plaintiff alleges, for example, that Todman "supervises operational policy and strategic planning duties and . . . monitors the Office of Resident Services," see id. at 6, and that Redding failed to "adequately train her own staff and to properly monitor their activities," see id. at 8 and allowed the Resident Council to operate in noncompliance with regulatory requirements.  See id. at 7.  Here again, however, Plaintiff has failed to make particularized allegations that assert actual and specific regulatory violations by these two Defendants.  Because his pleadings do not support a

conclusion that either Todman or Redding violated HUD regulations, both are entitled to qualified immunity.  See Harris, 932 F.2d at 13.

       B.  Official-Capacity Claim

As an individual sued in his official capacity may not claim qualified immunity, the Court must separately address Plaintiff's allegation that Defendants are liable in their official capacities.  See Brandon v. Holt, 469 U.S. 464, 472-73 (1985).  "A § 1983 suit for damages against municipal officials in their official capacities is . . . equivalent to a suit against the municipality itself."  Robertson v. Dist. of Columbia, No. 09-1188, 2010 WL 3238996, at *4 (D.D.C. Aug. 16, 2010) (quoting Atchinson v. Dist. of Columbia, 73 F.3d 418, 424 (D.C. Cir. 1996)) (internal quotation marks omitted).  A municipality, however, may not be held liable under § 1983 for the acts of its employees on a theory of *respondeat superior*.  See Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978).   Instead, to hold a municipality liable under § 1983, a plaintiff has to plead facts that demonstrate that the municipality's "policy or custom" caused the constitutional injury.  Id. at 694; see also Connick v. Thompson, 131 S. Ct 1350, 1357-58 (2011); Baker v. Dist. of Columbia, 326 F. 3d 1302, 1305 (D.C. Cir. 2003).

Section 1983 only imposes liability on a municipality, therefore, when its own illegal action – *i.e.*, "'action [taken] pursuant to official municipal policy'" – "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  Connick, 131 S. Ct. at 1359 (quoting Monell, 436 U.S. at 691-92); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).  In other words, "a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'"  City of Canton v. Harris, 489 U.S. 378, 388-89 (1989) (quoting Monell, 436 U.S. at 694 and Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981)).  "[A] city's inaction, including its failure to train or supervise its

12

employees adequately, [can] constitute[ ] a policy or custom under <u>Monell</u> when it can be said that the failure amounts to deliberate indifference towards the constitutional rights of persons in its domain." <u>Daskalea v. Dist. of Columbia</u>, 227 F.3d 433, 441 (D.C. Cir. 2000) (internal quotation marks omitted).

A § 1983 complaint that alleges municipal liability, moreover, "must include some factual basis for the allegation of a municipal policy or custom." <u>Atchinson</u>, 73 F.3d at 422. Here, Plaintiff has alleged nothing of the sort. He merely contends that Defendants Todman and Redding have inadequately managed employees, not that DCHA has been deliberately indifferent to people's constitutional rights or that it has mismanaged previous elections at the James Apartments or at other buildings. This is plainly insufficient under the <u>Monell</u> standard. <u>See, e.g.</u>, <u>Rodriguez v. Avita</u>, 871 F.2d 552, 555 (5th Cir. 1989) ("conclusory allegations of . . . 'grossly inadequate training'" do not make out a case of a deliberately indifferent policy); <u>Milligan v. City of Newport News</u>, 743 F.2d 227, 230 (4th Cir. 1984) ("[A] municipality's 'policy' of inaction . . . must be of such a character that municipal employees could reasonably infer from it tacit approval of the conduct in issue. For only so could the requisite causal connection between policy and constitutional deprivation be found.").

Any claim against these Defendants is their official capacity, therefore, must be dismissed as well.

**IV.       Conclusion**

As Defendants are entitled to qualified immunity on much of the case and Plaintiff's

remaining claims are insufficient, the Court will grant their Motion and dismiss the case without

prejudice.  A separate Order consistent with this Opinion will be issued this day.


*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  Sept. 18, 2012